UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

EARL JOSEPH GEORGE,

                     Plaintiff,

v.                                             1:19-CV-0812
                                             (WBC)

COMMISSIONER OF SOCIAL SECURITY,

                     Defendant.
_____

APPEARANCES:                          OF COUNSEL:

LACHMAN & GORTON                  PETER GORTON, ESQ.
  Counsel for Plaintiff
1500 East Main St.
P.O. Box 89
Endicott, NY 13760

U.S. SOCIAL SECURITY ADMIN.      NICOL FITZHUGH, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

       The parties consented, in accordance with a Standing Order, to proceed before

the undersigned.  (Dkt. No. 15.)  The court has jurisdiction over this matter pursuant

to 42 U.S.C. § 405(g).  The matter is presently before the court on the parties' cross-

motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of

Civil Procedure.  For the reasons discussed below, Plaintiff's motion is denied and the

Commissioner's motion is granted.

## I.     RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born in 1971.  (T. 266.)  He completed the 12th grade.  (T. 272.)
Generally, Plaintiff's alleged disability consists of back injury, learning disability, high
blood pressure, and depression.  (T. 271.)  His alleged disability onset date is April 16,
2014.  (T.99.)  His date last insured is June 30, 2016.  (*Id.*)  His past relevant work
consists of truck driver and farm hand.  (T. 272.)

### B.    Procedural History

On January 14, 2016, Plaintiff applied for a period of Disability Insurance Benefits
("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the
Social Security Act.  (T. 266.)  Plaintiff's applications were initially denied, after which he
timely requested a hearing before an Administrative Law Judge ("the ALJ").  On May 8,
2018, Plaintiff appeared before the ALJ, Robert Lynch.  (T. 30-64.)  On July 27, 2018,
ALJ Lynch issued a written decision finding Plaintiff not disabled under the Social
Security Act.  (T. 7-29.)  On April 30, 2019, the AC denied Plaintiff's request for review,
rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)
Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and
conclusions of law.  (T. 12-25.)  First, the ALJ found Plaintiff met the insured status
requirements through June 30, 2016 and Plaintiff had not engaged in substantial gainful
activity since April 16, 2014.  (T. 12.)  Second, the ALJ found Plaintiff had the severe
impairments of: morbid obesity; sciatica status post herniated disc at L4-L5; sleep
apnea; insomnia; borderline intellectual functioning; and depression.  (T. 13.)  Third, the

ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (*Id.*) Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a); except Plaintiff:

> can lift 10 pounds occasionally and 5 pounds frequently. [Plaintiff] can stand and/or walk for a cumulative total of 2 hours during an 8-hour workday, and can stand/walk continuously without rest for 15 minutes. [Plaintiff] can sit for a cumulative total of 6 to 8 hours during an 8-hour workday, and can sit continuously without rest for 45 minutes. When performing work while ambulating, [Plaintiff] requires the use of a cane; provided, however, [Plaintiff] can use his contralateral upper extremity to carry and/or manipulate objects. [Plaintiff] requires the opportunity to change positions every 45 minutes – without leaving the workstation or being off tasks – to relieve discomfort. Such positional changes would permit [Plaintiff] to stand briefly if performing seated work or to sit or lean briefly if performing work standing or walking, for a period not to exceed three minutes. [Plaintiff] can occasionally climb ramps and stairs, but can never climb ladders and scaffolds. [Plaintiff] can occasionally stoop, kneel, and crouch, but can never crawl. [Plaintiff] does not have limitations with respect to the use of his upper extremities. [Plaintiff] cannot work in environments that would result in concentrated exposure to extreme cold or vibration. [Plaintiff] can perform work that consists of simple, routing tasks, and only requires simple reading and math skills. In addition, [Plaintiff] must work in an environment that is isolated from the public and requires no more than occasional and superficial interaction with coworkers and supervisors.

(T. 15-16.) Fifth, the ALJ determined Plaintiff was unable to perform past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 22-24.)

## II.   THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.   Plaintiff's Arguments

Plaintiff makes four separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues the ALJ failed to include limitations to work pace and/or attendance in the RFC despite "undisputed opinions finding such limitations."

(Dkt. No. 7 at 9-12.)  Second, Plaintiff argues the ALJ improperly weighed the medical opinion evidence in the record.  (*Id*. at 12-15.)  Third, Plaintiff argues the ALJ adopted vocational expert testimony based on an incomplete hypothetical.  (*Id*. at 19.)  Fourth, and lastly, Plaintiff argues the ALJ failed to satisfy his step five burden of demonstrating jobs exist in significant numbers in the national economy Plaintiff can perform.  (*Id*. at 19.)

### B.    Defendant's Arguments

In response, Defendant makes two arguments.  First, Defendant argues the ALJ appropriately considered the opinion evidence in the record.  (Dkt. No. 14 at 14-25.) Second, Defendant argues the ALJ appropriately relied upon the vocational expert's testimony to support his step five finding Plaintiff could perform "other work" existing in the national economy.  (*Id*. at 25-31.)

## III.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct

legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.      Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R.

§§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this

sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct.

2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity;
> (2) whether the claimant has a severe impairment or combination of
> impairments; (3) whether the impairment meets or equals the severity of the
> specified impairments in the Listing of Impairments; (4) based on a 'residual
> functional capacity' assessment, whether the claimant can perform any of
> his or her past relevant work despite the impairment; and (5) whether there
> are significant numbers of jobs in the national economy that the claimant
> can perform given the claimant's residual functional capacity, age,
> education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.    ANALYSIS

For ease of analysis Plaintiff's arguments will be addressed out of order and in a

consolidated manner.

### A.    Medical Opinion Evidence

Plaintiff argues the ALJ failed to properly evaluate the medical opinions provided

by treating source Joseph DePra, M.D. and non-examining State agency medical

consultant D. Brown, Psy.D.  (Dkt. No. 7 at 14-21.)

The opinion of a treating source will be given controlling weight if it "is well

supported by medically acceptable clinical and laboratory diagnostic techniques and is

not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §

404.1527(c)(2), 416.927(c)(2).  When assigning less than "controlling weight" to a

treating physician's opinion, the ALJ must "explicitly consider" the four factors

announced in *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008).  *Estrella v. Berryhill*, 925

F.3d 90, 95 (2d Cir. 2019) (internal quotation marks omitted).  Those factors, referred to

as "the *Burgess* factors,"  are "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist."  *Estrella,* 925 F.3d at 95-96 (citation omitted); 20 C.F.R. 404.1527(c)(2), 416.927(c)(2)[1].  A reviewing court should remand for failure to consider explicitly the *Burgess* factors unless a searching review of the record shows that the ALJ has provided "good reasons" for its weight assessment. *Id*. at 96; *see Guerra v. Saul*, 778 F. App'x 75, 77 (2d Cir. 2019) ("While the ALJ here did not always explicitly consider the *Burgess* factors when assigning the treating physician' opinions less than controlling weight, we nonetheless conclude that the ALJ provided sufficient "good reasons" for the weight assigned.").

On April 26, 2018, Dr. DePra completed a check box "Questionnaire."  (T. 617-618.)  Dr. DePra indicated he treated Plaintiff for sciatica, learning disability, and obesity.  (T. 617.)  When asked if Plaintiff's impairments would cause pain, Dr. DePra checked "yes."  (*Id*.)  When asked if Plaintiff's impairment would cause fatigue, Dr. DePra checked "yes."  (*Id*.)  When asked if pain or side effects from medication would cause diminished concentration, Dr. DePra checked "yes."  (*Id*.)  When asked if impairments or medication side effects would cause diminished work pace, Dr. DePra checked "yes."  (*Id*.)  When asked if impairments would cause the need to rest at work, the doctor checked "yes."  (*Id*.)  When asked how much of the workday Plaintiff would be "off task," Dr. DePra checked "more than 33% of the day."  (*Id*.)  When asked if

---

[1]        Effective March 27, 2017, many of the regulations cited herein have been amended, as have Social Security Rulings ("SSRs").  Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the court reviews the ALJ's decision under the earlier regulations and SSRs.

Plaintiff's impairments would produce good days and bad days, the doctor checked "yes."  (*Id*.)  When asked how many days per month Plaintiff would be absent from work, the doctor checked "more than 4 days per month."  (T. 618.)

Dr. DePra also provided physical functional limitations.  The doctor indicated Plaintiff could sit for approximately less than one hour a workday.  (T. 618.)  Dr. DePra indicated Plaintiff should change positions every ten minutes.  (*Id*.)  He indicated Plaintiff could stand/walk for less than one hour a workday.  (*Id*.)  Dr. DePra indicated Plaintiff could lift and carry zero to five pounds occasionally and should not lift and carry over five pounds.  (*Id*.)

Here, the ALJ properly assessed Dr. DePra's opinion.  The ALJ afforded Dr. DePra's opinion "little weight."  (T. 22.)  The ALJ reasoned Dr. DePra did not provide "significant treatment or evaluation" of Plaintiff's back impairments prior to April 2018. (*Id*.)  The ALJ further stated the record did not contain evidence that the doctor actually examined Plaintiff between the time Plaintiff requested the form be completed and when the doctor completed the form.  (*Id*.)  The ALJ further concluded the opinion was inconsistent with a letter from Dr. DePra indicating Plaintiff could not serve on jury duty due to depression; however, the letter did not contain any limitations on sitting, standing, or walking.  (*Id*.)  The ALJ noted Plaintiff complained of back pain on July 6, 2016; however, treatment notations did not contain complaints of back pain again until one occasion on January 25, 2017 and again on March 6, 2018.  (*Id*.)  Lastly, the ALJ concluded the limitations provided in the opinion were inconsistent with the lack of physical findings to support them.  (*Id*.)

Plaintiff argues the ALJ's conclusion was the product of factual and legal error because, contrary to the ALJ's assertion, the doctor did examine Plaintiff and the doctor's opinion was supported by objective evidence and treatment.  (Dkt. No. 7 at 14.)  To be sure, records contain treatment notations from Dr. DePra beginning in 2015.  (T. 451.)  However, the ALJ concluded Dr. DePra's opinion was undermined by lack of treatment for his back impairment, not for lack of treatment in general.  (T. 25.)  Indeed, Dr. DePra's earliest treatment notation, from November 2015, indicated at the time of the encounter, Plaintiff sought treatment because he went to the dentist who informed him he had high blood pressure.  (T. 451.)  Plaintiff gave a history of present illness ("HPI") of depression and back injury.  (*Id*.)  At that time Plaintiff was assessed with hypertension, "screening for lipid disorders," and depression.  (T. 452.)  In December 2015, Plaintiff reported his depression was "much improved" and his blood pressure was under good control.  (T. 448.)

In April 2016, Dr. DePra assessed Plaintiff with insomnia, hypertension, "screening for lipid disorder," and depression.  (T. 445.)  In May 2016 and July 2016 Plaintiff was seen for acute sick visits.  (T. 511, 512, 515, 517, 520, 521.)  In September 2016, Plaintiff reported increased depression.  (T. 510.)  In November 2016, Plaintiff reported acute memory issues and joint pain, which Dr. DePra concluded were most likely due to sleep apnea.  (T. 507.)  A letter dated December 2016 indicated Plaintiff missed appointments in March, October, and December of 2016.  (T. 504.)  In January 2017 Plaintiff received treatment for a wound and cold, he noted his depression was "good."  (T. 555, 556, 560.)[2]  In February 2017, Plaintiff requested an excuse from jury

---

[2]     In January 25, 2017, Dr. DePra included "back pain" under assessments; however, Plaintiff's chief complaints were "chronic, open referral to sleep lab and would on face patient is unsure of

duty due to his depression.  (T. 554, 565.)  In the spring of 2017, Plaintiff received acute and routine care, at no time did Plaintiff report back pain nor was Plaintiff assessed with a back impairment.  (T. 544, 549, 553.)

Plaintiff did not seek care between October 30, 2017 and March 6, 2018.  (T. 530.)  In April 2018, two years after his date last insured and four years after his alleged onset date, Plaintiff was assessed with "back pain" and scheduled an appointment with Dr. DePra to complete the Questionnaire.  (T. 612.)

As outlined above, and by the ALJ in his decision, Dr. DePra's treatment records reflected gaps in treatment, only intermittent pain complaints and treatment for symptoms unrelated to pain, and minimal to normal examination findings, including no deficits in strength, motor, sensory, reflexes, range of motion, gait.  (T. 18-19, 444-453, 504-525, 526-593); *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (ALJ must consider the frequency, length, nature, and extent of treatment in assessing treating source opinion).  The ALJ noted when Plaintiff was examined in connection with a sleep study in January 2017, Plaintiff did not complain of back pain and denied leg edema, and examination indicated steady gait and normal muscle tone.  (T. 22, 581-82.)  The ALJ also noted Dr. DePra wrote a letter excusing Plaintiff from jury duty in February 2017 due to mental, not physical, impairments.  (T. 22, 565.)  And as the ALJ pointed out, a review of the "Patient Summary" listing during each of Plaintiff's encounters or telephone communications with Dr. DePra's office showed the first mention of back pain

---

the cause."  (T. 560-562.)  Plaintiff's medications for hypertension and depression were refilled, along with an ointment for impetigo and an inhaler.  (T. 561.)  No plan was made to address any back pain.  (*Id.*)

occurred in July 2016, with only two additional back pain references in January 2017 and March 2018.  (T. 22, 530-31.)

The ALJ properly concluded Dr. DePra's opinion was "inconsistent with treatment (or lack thereof) provided."  (T. 22); *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (ALJ must consider the consistency of the treating opinion with the remaining medical evidence).  Indeed, as outlined above, although Plaintiff was assessed with back pain on three occasions, Plaintiff did not receive treatment for his back impairment from Dr. DePra.  Plaintiff argues the ALJ impermissibly afforded Dr. DePra's opinion less weight due to lack of evidence.  Plaintiff asserts he was receiving care for his back at another provider, Guthrie.  (Dkt. No. 7 at 15.)  Plaintiff does not provide evidence of treatment at Guthrie during the relevant time period.  Indeed, the record indicates Plaintiff was not receiving treatment at Guthrie for his back impairment while simultaneously receiving care from Dr. DePra.  Plaintiff informed Dr. DePra's office in 2018 that his Worker's Compensation case was closed in 2013, he had not had pain medication in "a long time," and last received treatment at Guthrie "years ago."  (T. 529.)  Early treatment notations from 2015 indicated Plaintiff "had been going" to Guthrie, but was no longer being treated there.  (T. 451.)  Therefore, Plaintiff's assertion that Dr. DePra did not treat Plaintiff's back impairment because it was being treated elsewhere is disingenuous.

Overall, the ALJ properly assessed Dr. DePra's opinion and the ALJ's determination to afford the opinion less than controlling weight was supported by substantial evidence in the record.

Plaintiff next argues the ALJ erred in his assessment of Dr. Brown's opinion. Plaintiff essentially argues the ALJ erred in affording Dr. Brown's opinion great weight because Dr. Brown failed to provide a narrative discussion describing how his RFC assessment accounted for moderate limitations in functioning.  (Dkt. No. 7 at 17-23.) Plaintiff argues Dr. Brown "ignore[d] conclusions" and "fail[ed] to describe the effect" of each impairment and merely recited some of the record evidence without connecting that evidence to the conclusion.  (*Id*.)  Lastly, Plaintiff argues Dr. Brown's opinion was "invalid" because he used vague terms, such as moderate, and impermissibly offered an opinion as to Plaintiff's level of work without assessment of actual functions.  (*Id*. at 19.)

In support of his argument, Plaintiff relies heavily on the Social Security Programs Operations Manual System ("POMS") at DI 24510.063 and 24510.065.  (Dkt. No. 7 at 17-23.)  The POMS guidelines "ha[ve] no legal force, and [they] do[ ] not bind the [Commissioner]."  *Schweiker v. Hansen*, 450 U.S. 785, 789, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981); *accord Tejada v. Apfel*, 167 F.3d 770, 775 (2d Cir. 1999).  For the reasons outlined below, the ALJ properly relied on the regulations in assessing Dr. Brown's opinion and the ALJ's weight determination was supported by substantial evidence.

On May 16, 2016, Dr. Brown reviewed the medical evidence in the record at the time and provided a mental RFC.  (T. 113-115.)  Dr. Brown opined Plaintiff had no limitations in his ability to remember locations and work-like procedures.  (T. 113.)  He opined Plaintiff was "not significantly limited" in his ability to: understand and remember very short and simple instructions; sustain an ordinary routine without special

supervision; and work in coordination with or in proximity to others without being distracted by them.  (T. 114.)  He opined Plaintiff was "moderately limited" in his ability to understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; and make simple work-related decisions.  (T. 113-114.)  He opined Plaintiff had no evidence of limitation in social interactions.  (T. 114.)  He opined Plaintiff had no evidence of limitation or was not significantly limited in his adaptation limitations.  (T. 114-115.) Based on Plaintiff's activities of daily living, his pervious claim for disability benefits, an exam dated April 5, 2016, and the consultative examiner's examination and opinion, Dr. Brown opined Plaintiff would be capable of "basic demands of simple, unskilled work on a sustained basis."  (T. 115.)

The ALJ afforded Dr. Brown's opinion "great weight."  (T. 21.)  The ALJ concluded the doctor's opinion was based on his knowledge of Social Security Administration regulations and policies, consistent with Plaintiff's reported activities of daily living, and findings showing his depression was managed with medication.  (*Id*.) The ALJ acknowledged Dr. Brown did not review all of the evidence in the record, which the ALJ determined supported greater social limitations.  (*Id*.)

Here, Dr. Brown provided sufficient narrative to support his determination and was not impermissibly vague.  At the time Dr. Brown provided his opinion the record contained mental health evidence from consultative examiner Amanda Slowik, Psy.D., Plaintiff's written testimony, and Plaintiff's prior application.  (T. 111.)  Under the heading "Mental Residual Functional Capacity Assessment," Dr. Brown provided an

opinion as to Plaintiff's limitation in mental functions of work.  For example, Dr. Brown opined there was "no evidence of limitation" in Plaintiff's ability to remember locations and work-like procedures and Plaintiff was "moderately limited" in his ability to understand and remember detailed instructions.  (T. 113.)  Under the heading "MRFC – Additional Explanation," Dr. Brown outlined Plaintiff's activities of daily living, evidence from his previous application, his psychiatric history, a treatment notation dated April 2016, and Dr. Slowik's examination and opinion.  (T. 115.)  Dr. Brown opined, based on his review of the evidence, Plaintiff was capable of performing the "basic demands of simple, unskilled work on a sustained basis."  (*Id.*)

Contrary to Plaintiff's argument, Dr. Brown's use of the term "moderate" was not inherently vague and further Dr. Brown provided adequate narrative to support his opinion.  First, although Dr. Brown stated Plaintiff had "moderate" limitations in various area of mental functioning, he nonetheless opined Plaintiff had no evidence of limitation in his ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration for short and simple instructions, sustain an ordinary routine, work in coordination with others, and had no limitations in the area of social interaction.  (T. 113-114.)  In general, the majority of Dr. Brown's "moderate limitations" were in areas of complex work.  (*Id.*)  Dr. Brown's specific findings are consistent with his opinion Plaintiff was capable of performing simple, unskilled work on a sustained basis.  (T. 115.)

Second, a finding of moderate limitations in mental functioning does not preclude the ability to perform unskilled work.  The Second Circuit has held that moderate limitations in work related functioning does not significantly limit, and thus prevent, a

14

plaintiff from performing unskilled work.  *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) ("None of the clinicians who examined [plaintiff] indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations."); *see McIntyre,* 758 F.3d at 152 (failure to incorporate limitations in a hypothetical is harmless error if the evidence demonstrates plaintiff can engage in simple, routine tasks or unskilled work despite limitations or the hypothetical otherwise implicitly accounted for plaintiff's non-exertional limitations); *see Whipple v. Astrue*, 479 F. App'x. 367, 370 (2d Cir. 2012) (consultative examiners' findings that plaintiff's depression caused moderate limitations in social functioning ultimately supported the ALJ's determination that plaintiff was capable of performing work that involved simple tasks and allowed for a low-stress environment).

Lastly, there is significant case law within the Second Circuit finding an RFC for simple routine work is not inherently inconsistent with limitations in the plaintiff's ability to deal with stress, or other specific areas of mental functioning, particularly where the source who provided such limitations ultimately opined the plaintiff is capable of performing simple, routine, repetitive work.  *See Wright v. Berryhill*, 687 F. App'x 45, 48-49 (2d Cir. 2017) (although consultative examiner opined plaintiff had mild to moderate limitations appropriately dealing with stress, he was nonetheless able to perform simple, routine work and therefore the court could not conclude "a reasonable factfinder would have to conclude" that plaintiff lacked the ability to perform the ALJ's mental RFC) (*citing Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d. Cir. 2012)); *see Coleman v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 389, 400 (W.D.N.Y. 2018) (ALJ's mental RFC limiting plaintiff to simple routine work properly accounted for opinions

plaintiff had moderate limitations in various areas of mental functioning); *see Cowley v. Berryhill*, 312 F. Supp. 3d 381, 384 (W.D.N.Y. 2018) (RFC for unskilled work accounted for moderate limitations with respect to stress); *see Tatelman v. Colvin*, 296 F.Supp.3d 608, 613 (W.D.N. Y. 2017) ("it is well-settled that a limitation to unskilled work ... sufficiently accounts for limitations relating to stress and production pace"); *Washburn v. Colvin*, 286 F. Supp. 3d 561, 566 (W.D.N.Y. 2017), *appeal dismissed* (Mar. 30, 2018) ("It is well settled that a limitation to unskilled work sufficiently accounts for moderate limitations in work-related functioning.").  Accordingly, Dr. Brown's opinion that Plaintiff could perform unskilled work, properly accounted for moderate limitations in specific abilities in mental work functioning.  As further outlined below, the ALJ's mental RFC, limiting Plaintiff to simple routine work with additional social limitations, properly accounted for Dr. Brown's opinion.

Overall, the ALJ properly assessed the medical opinion evidence in the record and the ALJ's determinations were supported by substantial evidence.

**B.     Mental RFC Determination**

Plaintiff argues the ALJ's mental RFC failed to include limitations to work pace and/or attendance "despite undisputed opinions findings such limitations."  (Dkt. No. 7 at 11-14.)  Plaintiff reiterates his argument that opinions using terms such as "moderate" are too vague to support an RFC determination.  (*Id*. at 12.)

The RFC is an assessment of "the most [Plaintiff] can still do despite [his] limitations."  20 C.F.R. §§ 404.1594(a)(1), 416.945(a)(1).  The ALJ is responsible for assessing Plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what Plaintiff can still do, provided by any

medical sources.  *Id*. §§ 404.1527(d), 404.1545(a)(3), 404.1546(c).416.927(d), 416.945(a)(3), 416.946(c).

As an initial matter, medical source opinions using terms like mild or moderate are not too vague to constitute substantial evidence where the examiner conducts a thorough examination and explains the basis for his opinion.  *Filer v. Comm'r of Soc. Sec.*, 435 F. Supp. 3d 517, 524 (W.D.N.Y. 2020) (internal citations omitted).  At outlined above, Dr. Brown's opinion was not impermissibly vague simple because he used the terms like "moderate."  Further, Dr. Slowik performed a physical examination, reviewed Plaintiff's past medical history, noted Plaintiff's medications, and reviewed Plaintiff's subjective complaints.  (T. 462.)  Therefore, the opinions of Drs. Brown and Slowik were not impermissibly vague, and the opinions provided substantial evidence to support the ALJ's mental RFC.

Here, the ALJ's mental RFC was proper and supported by substantial evidence. In formulating Plaintiff's mental RFC the ALJ relied on the medical opinion provided by Drs. Brown and Slowik.  As outlined above, Dr. Brown concluded, despite moderate limitations, Plaintiff was capable of performing the basic demands of simple, unskilled work on a sustained basis.  (T. 115.)  The ALJ afforded "great weight" to Dr. Brown's opinion.  (T. 21.)  Dr. Slowik opined Plaintiff was "mildly" limited in his ability to follow and understand simple directions and instructions, perform simple tasks independently, relate adequately with others, and appropriately deal with stress.  (T. 462.)  She further opined Plaintiff was "markedly limited in his ability to maintain attention and concentration and perform complex tasks."  (T. 463.)  She opined Plaintiff was "moderately to markedly limited in ability to learn new tasks," and "moderately limited" in

his ability to maintain a regular schedule.  (*Id.*)  The ALJ afforded Dr. Slowik's opinion "partial weight."  (T. 21.)  The ALJ determined the doctor's opinion regarding Plaintiff's ability to perform simple tasks was consistent with Dr. Brown's opinion and Plaintiff's activities of daily living; however, the remainder of her opinion was not consistent with findings Plaintiff's depression was managed by medication, his history of semiskilled and skilled work, and evidence of greater social limitations.  (*Id.*)

Plaintiff argues all of the medical sources opined Plaintiff had greater work pace/attendance limitations and the ALJ "improperly substituted his own lay opinion" for medical opinion because he did not cite to any contrary opinion.  (Dkt. No. 7 at 13.)  First, the ALJ was not required to identify evidence explicitly rebutting the opinions of medical sources before discounting or rejecting them.  *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018).  Second, as outlined above, the ALJ properly found aspects of the medical source's opinions inconsistent with other substantial evidence in the record. *Smith*, 740 F. App'x at 726.

Therefore, the ALJ's mental RFC, limiting Plaintiff to simple, routine, repetitive work with additional social limitations, was supported by the opinions of Drs. Brown and Slowik.

### C.    Plaintiff's Remaining Arguments

Plaintiff argues the testimony from the vocational expert ("VE") did not support the ALJ's conclusion that jobs exist in significant numbers in the national economy within Plaintiff's RFC.  (Dkt. No. 7 at 21.)  This argument fails.  Plaintiff criticizes the ALJ's reliance on an RFC that did not incorporate greater functional limitations regarding attendance and ability to remain on task.  But these opinions were

discounted, and their conclusions rejected.  *See Smith*, 740 F. App'x at 726-727.  The Commissioner's burden at step five is to show the existence of possible employment for an individual with the RFC determined by the ALJ in the fourth step of the sequential analysis.  *See* 20 C.F.R. §§ 404.1546(c), 416.946(c).  It was therefore proper for the VE to respond to hypotheticals premised on the ALJ's RFC.

Plaintiff also argues that the ALJ erred in relying on the VE's testimony because the job numbers the VE identified were, according to Plaintiff, based on the Occupational Employment Survey (OES), and "OES data cannot constitute substantial evidence in support of the Step 5 burden."  (Dkt. No. 7 at 21-22) (citing cases considering vocational expert testimony based on OES data).  However, Plaintiff's argument misconstrues the VE's testimony and does not establish error in this case.

During the May 2018 administrative hearing, the following exchange between Plaintiff's counsel and the VE occurred:

> Q [by Plaintiff's counsel]: Okay, thank you. Now what was the source of your job numbers?
> A [by the VE]: U.S. Department of Labor.
> Q [by Plaintiff's counsel]: Okay. Now I'm aware that they publish statistics on a quarterly basis and they use the Occupational Employment Survey, is that what you're referring to?
> A [by the VE]: It's National Occupational Employment and Wage Estimates.
> Q [by Plaintiff's counsel]: Right. And they publish it quarterly, right?
> A [by the VE]: Yes.
> Q [by Plaintiff's counsel]: Yeah, yeah. That stuff is correlated to the Occupational Employment Survey, you're aware of that, correct?
> A [by the VE]: I believe that's right.
> Q [by Plaintiff's counsel]: All right, good. Are you aware of any sedentary jobs that have - in the GED section where they have ones across the board?
> A [by the VE]: No.
> ATTY: Okay, thanks. Bear with me a sec to see if I have further questions. I don't believe I do, so thank you, Mr. England.
> VE: You're welcome.
> ATTY: I don't have further questions, Your Honor.

(T. 61.)

In response to the attorney's question, the VE testified that the source of his job numbers was the "U.S. Department of Labor," and as the administrative hearing transcript shows, it was only when asked by Plaintiff's counsel whether that information "correlated" with the OES did the vocational expert indicate that he "believe[d] that's right."  (T. 61.)  Plaintiff's statement that the VE testified he was basing his job numbers data on the OES is inaccurate.  Plaintiff's attorney did not object to the VE's testimony, nor further cross-examine the VE as to the source of his job numbers.  (T. 55, 61.)

Here, and as permitted by the Second Circuit, the ALJ appropriately relied upon the VE's testimony to support the step five finding, and Plaintiff's argument to the contrary does not identify a basis for remand.  *See McIntyre*, 758 F.3d at 152 (recognizing that "[a]s we have previously held, a vocational expert is not required to identify with specificity the figures or sources supporting his conclusion, at least where he identified the sources generally," citing *Brault*, 683 F.3d at 450, and further concluding that "the vocational expert was not required to articulate a more specific basis for his opinion, and the ALJ reasonably credited this testimony, which was given on the basis of the expert's professional experience and clinical judgment, and which was not undermined by any evidence in the record."); *Brault,* 683 F.3d at 450 (citing its prior holding in *Galiotti v. Astrue*, 266 F. App'x. 66 (2d Cir. 2006) in which the Court affirmed despite the fact that "the VE, while not providing the specific information the claimant wanted, 'identified the sources he generally consulted to determine such figures," and in which "[w]e also noted the marked absence of any 'applicable regulation

or decision of this Court requiring a vocational expert to identify with greater specificity the source of his figures or to provide supporting documentation.'")).

Therefore, the ALJ properly assessed the medical opinion evidence in the record and his RFC determination was supported by substantial evidence.  The ALJ properly relied on the VE testimony provided at the hearing in making his step five determination that a significant number of jobs exist in the national economy Plaintiff could perform.

**ACCORDINGLY**, it is

ORDERED that Plaintiff's motion for judgment on the pleadings (Dkt. No. 7) is **DENIED**; and it is further

ORDERED that Defendant's motion for judgment on the pleadings (Dkt. No. 14.) is **GRANTED**; and it is further

ORDERED that Defendant's unfavorable determination is **AFFIRMED**; and it is further

ORDERED that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated:          October 6, 2020

William B. Mitchell Carter
U.S. Magistrate Judge